IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DAVID LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-3042 |
| | ) | |
| ILLINOIS STATE BOARD OF ELECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on cross motions for summary judgment (d/e 26) (d/e 28). Plaintiff David Lee (Lee) is a resident of the 44th Illinois Legislative District who wishes to run as that district's independent candidate for the Illinois State Senate. Lee is suing under the First and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983. He alleges that the number of nominating petition signatures which Illinois requires for an independent candidate to be placed on the ballot and the early filing deadline set forth in the Illinois Election Code, 10 ILCS 5/10-3 (§ 10-3), prevent him from running for the Illinois

State Senate. The Complaint further alleges that the onerous requirements of § 10-3 violate Lee's First and Fourteenth Amendment rights. Lee asserts that the Illinois Election Code, 10 ILCS 5/10-2 (§ 10-2), which governs the rule for new political party candidates, is not a constitutionally viable alternative for him because he does not wish to associate with others in a political party in order to run for office. Lee argues that § 10-2 abrogates his First Amendment association rights and results in a smaller number of voters who would be willing to sign his nominating petition. Plaintiff moves for summary judgment on all counts. Defendants, the individual members of the Illinois State Board of Election, move for summary judgment on all counts. Defendants contend that Lee lacks standing because he has not filed any nominating petitions and that his claim that § 10-2 violates his First Amendment right of free association is not ripe. Defendants further contend that § 10-3 is constitutional and that § 10-2 does not place an unconstitutional restriction on an independent candidate's First Amendment right of free association. For the reasons set forth below, the Court finds that Defendants are entitled to summary judgment because the requirements set forth in §§10-3 and 10-2 are constitutionally permissible.

## STATEMENT OF THE FACTS

Plaintiff Lee is a resident of the 44th Illinois State Senate District, and wishes to run for the State Senate from that district as an independent candidate. Lee does not wish to run as the candidate of any new or established political party. Lee states that he has not submitted any nominating petitions to the State Board of Elections because of the stringent requirements of § 10-3 applicable to independent candidates. Section 10-3 requires independent candidates for the Illinois General Assembly to collect signatures of "not less than 10%, nor more than 16% of the number of persons who voted at the next preceding general election in such district or political subdivision in which such district . . . voted as a unit . . . ." 10 ILCS 5/10-3. Section 10-3 further requires independent candidates to file nominating petitions 323 days before the general election. Plaintiff's Motion for Summary Judgment, p. 2. Lee argues that the above requirements of § 10-3 are among the nation's most onerous requirements for independent candidates. Plaintiff's Motion for Summary Judgment, Exhibit 1, Declaration of Richard Winger in Support of Plaintiff's Motion for Declaratory Relief, (Winger Declaration), p. 2. Lee further contends that the stringent "requirements are a massive and unreasonable burden on independent candidates and their supporters, unjustified by any potential

3

state interest." Plaintiff's Motion for Summary Judgment, p. 3. Therefore, Lee asserts that they violate his First and Fourteenth Amendment rights under the Constitution. Id. Thus, he argues that the Illinois Election Code ultimately "has the effect of prohibiting [him] from running as an independent candidate." Comp., ¶ 9.

Lee also states that the ability to file nominating petitions as a candidate of a new political party is no reasonable alternative: "Lee does not wish to be forced into associating with others in a political party in order to run for public office." Id. ¶ 10. Indeed, Lee argues that, if he chooses to run as the nominee of a new political party, § 10-2 of the Illinois Election Code would require that he "cajole" registered voters to form a new political party. He argues that this forced association abrogates his First Amendment association rights and decreases the number of voters willing to sign his nominating petition. Plaintiff's Motion for Summary Judgment, p. 10.[1] He also argues that he might need to recruit two other candidates for state representative to run in his district on his political party. Id., p. 10.

---

[1] The record does not indicate whether Lee intends to run in the next state senatorial election. However, an action challenging the constitutionality of statutory requirements for independent candidates to be placed on the ballot does not necessarily become moot when the election date (2004) passes during the pendency of the case, especially where the constitutional construction may simplify future challenges. See Rosario v. Rockefeller, 410 U.S. 752 (1973).

At summary judgment, the movant must present evidence which demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to the non-moving party. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Once the moving party has produced evidence showing that he is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain. <u>Matsushita Elec. Ind. Co. Ltd., v. Zenith Radio Corp.</u>, 475 U.S. 574, 576 (1986). When viewed in the light most favorable to Lee, Defendants are entitled to summary judgment because the requirements of §§ 10-2 and 10-3 are constitutionally permissible.

## ANALYSIS

A.   <u>The Early Filing Deadline Under § 10-3</u>

The Court in <u>Anderson v. Celebrezze</u>, enunciated the standard by which the constitutionality of a ballot access statute is determined.

> It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by

>its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

Anderson, 460 U.S. 780, 789 (1983). Generally, when the state provides reasonable and nondiscriminatory interests in regulating the election process, the Court concludes that those interests are sufficient to validate the regulation. Libertarian Party of Illinois v. Rednour, 108 F.3d 768, 773 (7th Cir. 1997) (citing Burdick v. Takushi, 504 U.S. 428, 434 (1992)).

Lee alleges that the requirements of § 10-3 are facially unconstitutional because they place unreasonable burdens upon independent candidates wishing to run for the Illinois General Assembly. Specifically, he challenges (1) the early filing deadline (323 days, or almost 11 months, before the general election) for submission of nominating petitions and (2) the requirement to file signatures equal to not less than 10% and not more than 16% "of the number of persons who voted at the next preceding general election in such district political subdivision . . . ." 10 ILCS 5/10-3.

The Seventh Circuit has held that § 10-3 of the Illinois Election Code,

6

requiring independent candidates to submit their nominating petitions 323 days before the general election, is constitutionally permissible. Stevenson v. State Board of Elections, 794 F.2d 1176, 1177 (7th Cir. 1986). The filing deadline (323 days) is permissible because the state has a substantial interest in regulating its election procedures, as well as prescribing the integrity of the election process. Stevenson v. State Board of Elections, 638 F.Supp. 547, 553 (N.D. Ill. 1986) (citing Storer v. Brown, 415 U.S. 724 (1974)). "The Supreme Court has long permitted states to impose various restrictions limiting a candidate's access to the ballot. States have not only an interest, but also a duty to ensure that the electoral process produces order rather than chaos." Rednour, 108 F.3d at 774. The Supreme Court has also held that, in order to promote an organized, fair, and honest democratic process, substantial regulation is necessary. Storer, 415 U.S. at 730. Accordingly, "the States have evolved comprehensive, and in many respects complex, election codes regulating in most substantial ways, with respect to both federal and state elections, the time, place, and manner of holding primary and general elections . . . ." Id.

    The filing deadline required under § 10-3 is constitutionally reasonable. Section 10-3 requires that independent candidates for the

Illinois General Assembly file their nominating petitions 92 to 99 days before the March primary election, which is held the same year as the general election. 10 ILCS 5/10-3. The effect of this requirement is that a prospective independent candidate must file his or her nominating petition in early December, the year before the general election in the following November.

The above filing date is the same for those candidates who run on party tickets. The 92 to 99 days' interval serves substantial state interests. It provides the state with the necessary time to resolve any challenges to candidacy of party nominees and to print ballots. Indeed, having the same filing date for all candidates promotes the state's substantial interest in requiring political parties to resolve their disputes no later than in the primary election. This considerably simplifies the general election to follow. Further, the Supreme Court also recognized the state's substantial interest in protecting "the direct primary process by discouraging any independent candidacy inspired by short term political goals, pique, or personal quarrel, and by preventing at the same time party raiding." Stevenson, 638 F. Supp. at 551. (citing Storer, 415 U.S. at 735).

The Court recognizes that the filing deadline increases the burden on

the unaffiliated independent candidate by requiring him to declare his candidacy 11 months in advance of the actual election. However, since this burden is relatively small for the truly independent candidate and the early filing deadline has previously been upheld and advances a legitimate State purpose, it does not result in a violation of Lee's constitutional rights. In addition, the only restriction on voters who would like to sign Lee's nominating petition is that they ". . . may subscribe to one nomination for such office to be filled, and no more." 10 ILCS §10-3. The voter is not barred from signing an independent candidate's petition because of having voted in a partisan primary at the last election (as was the case in Storer); neither is the voter who signs an independent candidate's petition barred from voting in the next partisan primary election. There is really no diminution in the number of potential petition signers for the independent candidate. And by having the independent candidates' petitions filed at the same time as those running for a political party's nomination, the State can verify that for any given office a particular voter only signed one candidate's petition. That requirement serves the State's legitimate purpose in seeing that a candidate seeking a position on the ballot has some modicum of support.

In addition, as Lee admitted, he has an alternative: he can file as a new political party, limited only to his own candidacy for the Illinois Senate from the 44th Legislative District. The evidence is undisputed that the 44th Legislative District is a distinct political subdivision, from which no other offices are elected, except the state senate. <u>Memorandum of Law in Support of Defendants' Response to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment (d/e 29)</u>, Attachment 1, <u>Affidavit of Patricia Freeman (Freeman Affidavit)</u>, ¶ 5. Accordingly, Lee could form, for example, the "David Lee Party" and not have to associate with anyone else running for office. His only need to associate with others would be to obtain signatures on his nominating petitions; as noted above, the State has a legitimate purpose to require some showing of support for a candidate before placing his name on the ballot in order to avoid a chaotic election process with hundreds of unsupported candidates for each office. As a new political party candidate he would not need to file until 134 days before the November election, and the signature requirement also drops to 5% of the number of voters who voted in the next preceding general election. 10 ILCS 5/10-6. Defendants are, therefore, entitled to summary judgment on this claim.

B.     The Signature Requirement Under § 10-3

As noted previously, "States have a major role to play in structuring and monitoring the election process, including primaries." <u>California Democratic Party v, Jones</u>, 530 U.S. 567, 572 (2000). Further, the Supreme Court has concluded that, "in order to avoid burdening the general election ballot with frivolous candidacies, a State may require parties to demonstrate, 'a significant modicum of support' before allowing their candidates a place on that ballot." <u>Id.</u> (quoting <u>Jenness v. Fortson</u>, 403 U.S. 431, 442 (1971)).

Section 10-3 requires an independent candidate to file nominating petitions with signatures constituting not less than 10%, nor more than 16%, of the number of people who actually voted (as opposed to the number of registered voters) at the last general election for that district. As noted above, Lee asserts that the Illinois signature requirement is the most onerous and burdensome in the country. Lee cites Georgia and South Carolina as examples of states with less burdensome signature requirements than Illinois' requirement. However, Illinois' requirement, as applied to Lee, is less onerous and burdensome than the Georgia and South Carolina laws cited by Plaintiff. Both Georgia and South Carolina laws require

11

prospective candidates to submit signatures of 5% of **all registered voters**, as opposed to Illinois' requirement in § 10-3 that independent candidates submit signatures of at least 10% of the number of **those people who voted in the last preceding election** in the 44th Legislative District. Plaintiff's Motion for Summary Judgment, Exhibit B, 2003, 2004 Ballot Access For An Independent Candidate for State Senate.

As of May 2005, 144,870 persons were registered to vote in the 44th Legislative District. Defendants' Statement of Undisputed Material Facts, ¶ 5. If Georgia and South Carolina's signature requirement formulas (5% of all registered voters) were applied to the number of registered voters in Illinois' 44th Legislative District, an independent candidate would be required to submit at least 7,244 signatures. However, if Lee had filed as an independent running in the November 2004 Election from the 44th Legislative District, he would have needed a minimum of 6,995 signatures. Defendants' Statement of Undisputed Material Facts, ¶ 4. This is 249 fewer signatures than would have been required under the Georgia or South Carolina formula. Freeman Affidavit, ¶ 3. The evidence suggests that, in reality, Georgia and South Carolina's signature requirements for independent candidates may require prospective candidates to submit a

higher minimum number of signatures with their nominating petitions than the signature requirement under § 10-3 of the Illinois Election Code.

Moreover, in <u>Jenness</u>, the Supreme Court upheld the Georgia law that required candidates from a political party to obtain signatures of at least 5% of the total number of voters eligible to vote in the last election for the relevant office. Additionally, in <u>Norman v. Reed</u>, the Supreme Court further embraced its decision in <u>Jenness</u> "by [validating] an Illinois election provision that required a candidate to obtain 5% of the vote or 25,000 petition signatures before it could run under an otherwise established political party's name within a particular voting district where that party was not yet established." <u>Rednour</u>, 108 F.3d at 774 (citing <u>Norman</u>, 502 U.S. 279, 295 (1992)).

The requirements of § 10-3 of the Illinois Election Code for independent candidates do not constitute too substantial a burden for Lee to satisfy, relative to the corresponding requirements of other states. Further, Lee could create his own party alternative, which would allow him to collect signatures of only 5% of the people who voted in the last election. This is the same number of candidate signatures as any other party candidate must file. Therefore, Defendants are entitled to summary

judgment on this claim.

C.     Requirements Under § 10-2

Lee claims that the onerous requirements of § 10-2 abrogate his First Amendment association rights and reduce the number of voters willing to sign his nominating petition. He argues that, under § 10-2, a prospective candidate wishing to run as a new party candidate is not only forced to convince voters to form a new party, but is also required to file a slate of candidates for state representative for the district in which he wishes to run.

Lee has misread the requirements provided in § 10-2. Under § 10-2, Lee does not have to associate with others running for office because he can form a new political party, such as the "David Lee Party," limited to only his own candidacy for the State Senate. As this party's sole candidate he could run for the Illinois State Senate from his district. Indeed, "[t]he relative disadvantage of running on a new party ticket in Illinois is small," because unlike those in other states, prospective candidates "need not have party machinery, nominating conventions, and the like, the first time they appear on the ballot." Stevenson, 794 F.2d at 1179 (J. Easterbrook concurring). In Illinois, a new party can be established and operated in basically the same manner as an independent candidacy. Id. Further, as noted earlier, the

14

44th Legislative District is a distinct political subdivision, and no other offices are elected from it. Thus, Lee's assertion that the statute requires him to also list candidates for the two state representative districts coterminous with his state senatorial district to satisfy the petition requirements is incorrect. Lee can file a new political party based on his own candidacy for the State Senate only.

Lee's claim that the requirements of § 10-2 would decrease the number of voters willing to sign his nominating petition is without any basis, even if he must file as a candidate of a new political party. It is unreasonable to believe that those voters who would have signed a petition for an independent candidate would suddenly decide not to sign for the same candidate, solely because the candidate seeks to access the ballot by filing as a new party candidate. Defendants are, therefore, entitled to summary judgment on this claim.

## CONCLUSION

THEREFORE, Plaintiff's Motion for Summary Judgment (d/e 26) is DENIED, and Defendants' Cross Motion for Summary Judgment (d/e 28) is ALLOWED because the requirements set forth in §§ 10-2 and 10-3 are constitutional. Defendants' Motion is denied otherwise. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: October 13, 2005.

FOR THE COURT:

                                                  s/ Jeanne E. Scott
                                               JEANNE E. SCOTT
                                    UNITED STATES DISTRICT JUDGE